**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
Steven B. Eichel
*Attorneys for the Debtor and Debtor in Possession*

**LEVINE & ASSOCIATES, P.C.**
15 Barclay Road
Scarsdale, New York 10583
Telephone (914) 600-4288
Michael Levine
*Special Litigation Counsel for*
*the Debtor and Debtor in Possession*

**UNITED STATED BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| **SHEM OLAM LLC,** | : | **Case No. 22-22493-SHL** |
| Debtor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| **YESHIVA CHOFETZ CHAIM INC. and 82** | : | **Adv. Pro. No. 22-07033-SHL** |
| **HIGHVIEW LLC,** | | |
| Plaintiffs, | | |
| - against - | : | |
| **82 HIGHVIEW LLC, SHEM OLAM LLC, and** | : | |
| **ARYEH ZAKS,** | | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFFS' AMENDED MOTION FOR ABSTENTION,
## <u>REMAND, AND A LIFT STAY ORDER</u>

## **TABLE OF CONTENTS**

**Page**

Table of Authorities

Preliminary Statement                                                     1

Statement of facts                                                       2

   I.   The Acquisition by the Debtor of the Highview Property and the
        Commencement of the Instant Adversary Proceeding                 2

   II.  Rabbi Mayer's Prior Unsuccessful Attempts to Improperly
        Control Entities                                                 5

         A.  Rabbi Mayer's False Claim to be in Control of Mosdos        6

         B.  Rabbi Mayer's False Claim to be in Control of CRDI          7

         C.  Rabbi Mayer's First False Claim to be in Control of YCC
             and 82 Highview                                             8

   III. The Prior Unsuccessful Attempts by Rabbi Mayer to
        Remand Proceedings                                               9

   IV.  The Tax Certiorari Litigation                                    11

   V. The Instant Adversary Proceeding                                   12

   VI.  Plaintiffs' Proofs of Claim                                      13


ARGUMENT

POINT I

MANDATORY ABSTENTION IS INAPPLICABLE BECAUSE
THIS COURT HAS CORE JURISDICTION
OVER THE "NEW" YCC ADVERSARY PROCEEDING                                  14

   I.  The issues in the instant Adversary Proceeding are "Core"         15

   II.  Movants' filing of a Proof of Claim also triggers "Core" Jurisdiction   22

## TABLE OF CONTENTS (Continued)

**Page**

POINT II

DISCRETIONARY ABSTENTION IS UNWARRANTED                        31

Conclusion                                                      35

## **TABLE OF AUTHORITIES**

**Page**

### *Judicial Authorities*

*All American Laundry Service v. Ascher (In re Ascher)*, 128 B.R. 639 (Bankr. N.D. Ill. 1991)   19

*Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010)   16

*BankUnited Fin. Corp. v. FDIC (In re Bank United Fin. Corp.),* 462 B.R. 885
    (Bankr. S.D. Fla. 2011)   18

*BankUnited Fin. Corp. v. FDIC (In re Bank United Fin. Corp.)*, 462 B.R. 885
    (Bankr. S.D. Fla. 2011)   20

*Ben Cooper, Inc. v. Ins. Co. of the State of Pa. (In re Ben Cooper)*, 896 F.2d 1394
    (2d Cir. 1990), vacated, 498 U.S. 964 (1990), reinstated, 924 F.2d 36 (2d Cir. 1991)   22

*BGFI GP I LLC v. Prieto (In re WP Realty Acquisition III LLC)*, 626 B.R. 154
    (Bankr. S.D.N.Y. 2021)   21

*Brown v. Fox Broad. Co. (In re Cox)*, 433 B.R. 911 (Bankr. N.D. Ga. 2010)   20

*Buena Vista TV v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, 307 B.R. 404
    422 (Bankr. S.D.N.Y. 2004)   27,29

*Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)   19,20

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602
    (S.D.N.Y. 2008)   32

*Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 126 S.Ct. 990, 163 L.Ed.2d 945 (2006)   18

*Cent. Vt. PSC v. Herbert*, 341 F.3d 186 (2d Cir. 2003)   27

*Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186 (2d Cir. 2003)   24

*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236,
    47 L.Ed.2d 483 (1976)   31

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S. Ct. 1236,
    47 L. Ed. 2d 483 (1976)   33

*Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500 (S.D.N.Y. 2015)   21

*Deutsche Oel & Gas S.A. v. Energy Capital Partners Mezzanine Opportunities Fund A*,
    No. 19-CV-11058 (RA) (S.D.N.Y. Sep. 30, 2020)   21

*Ernst & Young & Ernst & Young, LLP v. Bankruptcy Services, Inc. (In re CBI Holding Co.)*,
    No. 94-B-438129 (BRL), 01-CIV-0131 (KMW) (S.D.N.Y. June 26, 2004)   21

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989)   23,27

*Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*,
    896 F.2d 1384 (2d Cir. 1990)   28,29

*Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384 (2d Cir. 1990)   25

*Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984)   33

## TABLE OF AUTHORITIES (Continued)

**Page**

### *Judicial Authorities (Continued)*

*Highbridge Broadway, LLC v. Assessor of the City of Schenectady*,
2016 NY Slip Op 03544 (May 5, 2016)                                      11

*In re 19 Court St. Assocs., LLC*, 190 B.R. 983 (Bankr. S.D.N.Y. 1996)    16

*In re Adelphia Commc'ns Corp.*, 285 B.R. 127 (Bankr. S.D.N.Y. 2002)      22

*In re Albion Disposal, Inc.*, 217 B.R. 394 (W.D.N.Y. 1997)               22

*In re Ames Dept. Stores*, 319 F. App'x 40 (2d Cir. 2009)                 25

*In re Argus Group 1700, Inc.*, 206 B.R. 737 (Bankr. E.D. Pa. 1996), *aff'd* 206 B.R. 757
(E.D. Pa. 1997)                                                          25

*In re Best Prods. Co.*, 68 F.3d 26 (2d Cir. 1995)                        31

*In re Best Reception Svs., Inc.*, 220 B.R. 932, *aff'd*. 206 B.R. 757 (E.D. Pa. 1997)   25

*In re CBI Holding Co.*, 529 F.3d 432 (2d Cir. 2008)                      31

*In re Continental Airlines*, 125 F.3d 120 (3d Cir. 1997)                 26

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir. 1992)               16

*In re Dreier*, 438 B.R. 449 (Bankr. S.D.N.Y. 2010)                       22

*In re Exide Techs.*, 544 F.3d 196 (3d Cir. 2008)                         26

*In re Gawker Media LLC*, 581 B.R. 754 (Bankr. S.D.N.Y. 2017)            22

*In re Lion Capital Group*, 46 Bankr. 850 (Bankr. S.D.N.Y. 1985)         29

*In re Manville,* 896 F.2d 1384 (2d Cir. 1990)                            24

*In re Meyertech Corp.*, 831 F.2d 410 (3d Cir. 1987)                  26,29,30

*In re Millenium Seacarriers, Inc.*, 02 Mont. 47 (CSH), No. 02-10180 (CB), Chapter 11
(S.D.N.Y. Mar. 25, 2002)                                                21

*In re Norrell*, 198 B.R. 987 (Bankr. N.D. Ala. 1996)                     26

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993)                  31

*In re Petrie Retail, Inc.*, 304 F.3d 223 (2d Cir. 2002)                  21

*In re Phico Group, Inc.*, 304 B.R. 170 (Bankr. M.D. Pa. 2003)           26

*In re Portrait Corp. of Am., Inc.*, 406 B.R. 637 (Bankr. S.D.N.Y. 2009) 32

*In re Reliance Grp. Holdings, Inc.,* 273 B.R. 374 (E.D. Penn. 2002)     17

*In re Residential Capital, LLC*, 2015 Bankr. LEXIS 2581 (Bankr. S.D.N.Y. 2014)   32

*In re Residential Capital, LLC*, 519 B.R. 890 (Bankr. S.D.N.Y. 2014)    32

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 Bankr. LEXIS 2581
(Bankr. S.D.N.Y. Aug. 4, 2015)                                          27

## TABLE OF AUTHORITIES (Continued)

**Page**

*Judicial Authorities (Continued)*

*In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702 (2d Cir. 1995) ............ 31

*In re Salander O'Reilly Galleries*, 453 B.R. 106 (Bankr. S.D.N.Y. 2011) ............ 21

*In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9 (S.D.N.Y. 2012) ............ 22

*In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9 (S.D.N.Y: 2012) ............ 16

*In re Springer-Penguin, Inc.*, 74 B.R. 879 (Bankr. S.D.N.Y. 1987) ............ 22

*In re Texaco Inc.*, 77 B.R. 433 (Bankr. S.D.N.Y. 1987) ............ 22,30

*In re Texaco, Inc.*, 109 B.R. 609 (Bankr. S.D.N.Y. 1989) ............ 23,27,28,33

*In re Turner*, 724 F.2d 338 (2d Cir. 1983) ............ 16

*In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999) ............ 31

*JCF AFFM Debt Holdings. L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins . Holdings, Inc.)*, 565 B.R. 566 (Bankr. D. Del. 2017) ............ 20

*Johnson v. Fisher (In re Fisher)*, 67 B.R. 666 (Bankr. D. Colo. 1986) ............ 20

*Katchen v. Landy*, 382 U.S. 323, 86 S. Ct. 467, 15 L. Ed. 2d 391(1966) ............ 23

*Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214 (S.D.N.Y. May 6, 2008) ............ 17

*Kirschner v. Grant Thorton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008) ............ 32

*Knopfler v. Schraiber (In re Schraiber)*, 97 B.R. 937 (Bankr. N.D. Ill. 1989) ............ 19

*Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374 (Bankr.E.D.Pa.2002) ............ 20

*Kraken Investments Ltd. v. Jacobs (In re Salander-O'reilly Galleries, LLC)*, 475 B.R. 9 (S.D.N.Y. 2012) ............ 19

*Kurz v. EMAK Worldwide, Inc.*, Civil No. 11-375-NLH (C.D. Cal. Sep. 9, 2011) ............ 26

*Langenkamp v. Culp*, 498 U.S. 42 (1990) ............ 27

*Langenkmp v. Culp*, 498 U.S. 42, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990) ............ 23

*Langston Law Firm v. Mississippi*, 410 B.R. 150 (S.D.N.Y. 2008) ............ 17

*Lebenthal Holdings, LLC v. S Street Sec. Holdings Inc. (In re Lebenthal Holdings LLC)*, 2018 WL 3629900 (Bankr. S.D.N.Y. 2018) ............ 15

*Lebenthal Holdings, LLC v. S. Street Holdings Inc. (In re Leenthal Holdings, LLC)*, 2018 WL 3629900 (Bankr. S.D.N.Y. 2018) ............ 31

*Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P.*, 487 B.R. 158 (S.D.N.Y. 2013) ............ 15

*MarketXT, Inc. v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574 (Bankr. S.D.N.Y. 2005) ............ 15

## TABLE OF AUTHORITIES (Continued)

**Page**

### *Judicial Authorities (Continued)*

*Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894 (Bankr. D. Del. 2010) 18

*Williams v. McGreevey (In re Touch Am. Holdings, Inc.)*, 401 B.R. 107 (Bankr. D. Del. 2009)    18

*Matter of Wood*, 825 F.2d 90 (5th Cir. 1987)    26

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S. Ct. 927,
74 L. Ed. 2d 765 (1983)    33

*Muir v. Long Island Realty Funding Corp. (In re Muir)*, 107 B.R. 13 (Bankr. E.D.N.Y. 1989)    22

*Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines*, 132 B.R. 4 (S.D.N.Y. 1991)    24

*Pan Am. World Airways. Inc. v. Evergreen Int'l Airlines. Inc.*, 132 B.R. 4 (S.D.N.Y. 1991)    24

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572 (2d Cir. 2011)    16

*Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 138 B.R. 442
(Bankr. D. Del. 1992)    20

*Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines)*,
138 B.R. 442 (D. Del. 1992)    19

*Residential Funding Co. LLC v. UBS Real Estate Securities (In re Residential Capital, LLC)*,
515 B.R. 52 (Bankr. S.D.N.Y. 2014)    16

*S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*,
45 F.3d 702 (2d Cir. 1995)    28,29,31

*S.G. Phillips Constructors, Inc. v. City of Burlington, Vt. (In re S.G. Phillips Constructors, Inc.)*,
45 F.3d 702 (2d Cir. 1995)    24

*S.G. Phillips Constructors, Inc.*, 45 F.3d 707 (2d Cir. 1995)    23

*Salander O'Reilly Galleries*, 2011 WL 2837494 (Bankr. S.D.N.Y. 2011)    18

*Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011)    15

*Straton v. New*, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 (1931)    21

*Sub-Culture, LLC v. Rogers Invs. (In re Culture Project)*, 571 B.R. 555 (Bankr. S.D.N.Y. 2017)    16

*U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999]    21

*Williams v. McGreevey (In re Touch Am. Holdings, Inc.)*, 401 B.R. 107 (Bankr. D. Del. 2009)    19


### *Legislative Authorities*

11 U.S.C. § 501    25

11 U.S.C. § 541    17,19,20

22 CRR-NY 202.60(b)(2)    11

28 U.S.C. § 1334    15-18,31

28 U.S.C. § 1452    15,20

## TABLE OF AUTHORITIES (Continued)

**Page**

***Legislative Authorities (Continued)***

28 U.S.C. § 157                                            15,17,22,24,27,30,31
Sponsor's Mem, Bill Jacket, L 1995, ch 693                          11

## PRELIMINARY STATEMENT

This memorandum of law is submitted by the Debtor, Shem Olam LLC ("Debtor") in opposition to the amended motion, purportedly brought on behalf of Yeshiva Chofetz Chaim Inc. ("YCC") and 82 Highview LLC ("82 Highview") (YCC and 82 Highview are hereafter referred to as the "Movants"), for mandatory or discretionary abstention from determining the within removed adversary proceeding (the "Adversary Proceeding"), remanding the same to state court, and lifting the automatic stay to permit the same to be tried in that venue.

Simply stated, Movants contend that the claims in the adversary proceeding are non-core and involve only state law issues and, consequently, must (or at least should) be tried in state court. However, while citing *some* of the judicial authorities relevant to mandatory and discretionary abstention, Movants entirely fail to address the established line of cases (as discussed in detail below) that stand for the propositions that (i) mandatory abstention is not available here because this Court has core jurisdiction over the claims in the Adversary Proceeding pursuant to 28 U.S.C. § 157(b)(2), which designates (in a non-exclusive list) a number of case types which are designated as "core proceedings," among them (1) "matters concerning the administration of the estate," (2) "allowance or disallowance of claims against the estate," (3) "orders to turn over property of the estate," and (4) "proceedings to determine, avoid, or recover fraudulent conveyances"; (ii) the Movants have filed Proofs of Claim which convert the Adversary Proceeding to a core proceeding even if it was not already such; (iii) discretionary abstention is not appropriate here because courts must be sparing in their exercise of permissive abstention, and may abstain only for a few extraordinary and narrow exceptions and, here, the exercise of that discretion would *completely* halt the ongoing claims reconciliation process and make it impossible for the Debtor to file a plan of reorganization; and (iv) the motion for a lift stay Order be denied as moot.

1

## STATEMENT OF FACTS[1]

### I.  The Acquisition by the Debtor of the Highview Property and the Commencement of the Instant Adversary Proceeding

Purported Plaintiff YCC is a religious entity of which Rabbi Aryeh Zaks ("Rabbi Aryeh"), is the President and Rabbi. YCC formerly owned the real property located at 82 Highview Road in Suffern, New York (the "Highview Property").  In 2007, the mortgagee on the Highview Property, TD Bank, N.A. ("TD Bank"), commenced an action against YCC seeking to foreclose TD Bank's mortgage on the Highview Property, which was then in default.

In that foreclosure action, TD Bank was eventually awarded a judgment of foreclosure, and a foreclosure sale took place on August 20, 2013, in which TD Bank purchased the Highview Property.  A copy of the recorded Referees' Deed conveying the Highview Property to TD Bank is annexed hereto and labeled Exhibit "1".

On September 18, 2017, TD Bank sold the Highview Property to an entity known as Del Realty, LLC ("Del Realty") for $1,400,000.00.  A copy of the recorded deed by which Del Realty acquired the Property is annexed hereto and labeled Exhibit "2".

Because substantial disputes had arisen between Rabbi Mayer Zaks ("Rabbi Mayer") and Rabbi Aryeh at that point related to Mosdos Chofetz Chaim Inc. ("Mosdos"), a property once owned by another religious entity for which they were the rabbis, Rabbi Aryeh and Henoch Zachs ("Henoch") (his son) decided that they would attempt to acquire the Highview Property from Del Realty so that Rabbi Aryeh could, if he wished, either use the site for YCC or form his own congregation in the future independent of Rabbi Mayer and use the Property as the site of Rabbi Aryeh's yeshiva and (ultimately) student housing units.

---

[1]  The facts set forth herein are derived from the Complaint and the affirmations submitted in the state court by the parties prior to this matter being removed to this Court.

Rabbi Aryeh and Henoch formed 82 Highview on October 16, 2018, with the intention of negotiating to acquire the Highview Property in the name of that entity as soon thereafter as possible. Henoch began negotiations and ultimately arranged for the acquisition of the Highview Property by 82 Highview. In order to leave all options open (potential development, resale of the property, etc.), he did not form 82 Highview as a religious corporation, but rather it was formed under § 203 of the New York Limited Liability Company Law. That gave Rabbi Aryeh and Henoch the greatest flexibility for the future use and/or disposition of the Highview Property with the least potential restrictions.[2] A copy of the filing receipt and articles of organization for 82 Highview are annexed hereto and labeled Exhibit "3". A copy of a printout from the New York Secretary of State confirming the formation date and status of 82 Highview is annexed thereto and labeled Exhibit "4".

At the time of the formation of 82 Highview, Rabbi Aryeh was the sole forming/founding member/manager of that entity. A copy of the operating agreement of 82 Highview is annexed hereto and labeled Exhibit "5".[3] In that operating agreement, Rabbi Aryeh designated YCC as the

---

[2] Insofar as Henoch was advised, even if an entity was not a religious or nonprofit entity, if the property was used by a religious or nonprofit entity, the property tax benefits would be the same.

[3] As Rabbi Mayer Zaks neither founded 82 Highview nor was on the Board of Trustees of YCC at the time of the transfer of 82 Highview to Rabbi Aryeh Zaks, there was no need for Rabbi Mayer Zaks to either see the 82 Highview Operating Agreement or authorize it. Moreover, although Rabbi Mayer now contends that the Operating Agreement was "bogus," he has not presented what he claims to be the *actual* operating agreement of 82 Highview (contending, instead, that there never was *any* operating agreement of 82 Highview at any time). However, Section 417 of New York's Limited Liability Company Law requires (at sub-section a), that "the members of a limited liability company **shall** adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be" (emphasis added). Section 417 further provides that "an operating agreement may be entered into before, at the time of or within ninety days after the filing of the articles of organization." In the case of 82 Highview, that entity was formed on October 16, 2018, and the Operating Agreement was executed

3

limited-duration member of 82 Highview "for the first thirty months of the LLC." That meant that YCC would be the sole member of 82 Highview LLC from October 16, 2018, through April 16, 2021, unless thereafter further extended by Rabbi Aryeh. The Operating Agreement further provided that:

> Automatically upon the completion of said thirty-month term, all rights title (sic) and membership interests in the LLC shall belong to the Forming Member Manger or if so designated by the Forming member manager, to anyone else he so designates.

> Upon the completion of the Thirty-month period above the percentage interest in the LLC that each member shall have is as follows:

| NAME & ADDRESS | CONTRIBUTION | %INTEREST IN LLC |
|---|---|---|
| (1)   **Rabbi Aryeh Zaks** | **NA** | **100%** |

The Highview Property was ultimately conveyed from Del Realty to 82 Highview on October 23, 2018, the week following Rabbi Aryeh's formation of 82 Highview. A copy of the recorded deed reflecting that transfer is annexed hereto and labeled Exhibit "6". Pursuant to the 82 Highview Operating Agreement, YCC remained the sole member of 82 Highview from October 16, 2018, until its term expired on April 17, 2021 (thirty months after the formation of 82 Highview), whereupon Rabbi Aryeh (having not extended YCC's membership) became the sole member of 82 Highview. Thus, as of April 17, 2021, the Property owned by 82 Highview was

---

six days later, on October 22, 2018. If, as Rabbi Mayer now contends, he was in control of YCC (and YCC was in control of 82 Highview at that time, why hasn't he produced the mandatory §417 operating agreement that he claims was controlling? Indeed, the only way that YCC could have possibly obtained *any* interest in 82 Highview was through such an operating agreement. If, as Rabbi Mayer now contends, the operating agreement of 82 Highview was "bogus," then YCC could not have *possibly* obtained (and therefore did not obtain) any interest in 82 Highview.[4] Even were it not that Rabbi Aryeh became the sole member of 82 Highview LLC at that point, the Operating Agreement still gave him the exclusive right to manage the LLC. Section II(3) of the Operating Agreement provided that "[t]his LLC shall be managed exclusively by its forming member manager."

now controlled by Rabbi Aryeh Zaks rather than YCC, as the right, title and membership interest in 82 Highview LLC was transferred to Rabbi Aryeh Zaks under the 82 Highview Operating Agreement.

On June 29, 2021 – more than *two months after* he became the sole member and manager of 82 Highview – Rabbi Aryeh Zaks caused the Highview Property to be transferred to the Debtor. A copy of the deed (recorded June 20, 2021) conveying the Highview Property from 82 Highview to the Debtor is annexed hereto and labeled Exhibit "7".[4]  On December 23, 2021 – almost *eight months* after YCC was no longer a member of 82 Highview, and almost *six months* after the acquisition of the Highview Property by the Debtor, Rabbi Mayer (purportedly on behalf of YCC and 82 Highview) commenced an action in the New York State Court, Rockland County, under Index No. 36879/2021 (the "State Court Action") seeking to set aside the conveyance of the Highview Property from 82 Highview to the Debtor.

## II.  Rabbi Mayer's Prior Unsuccessful Attempts to Improperly Control Entities

That filing was just one more in a long line of state court actions that Rabbi Mayer has commenced attempting to improperly take control of other entities and/or to use and occupy real properties that he claimed to own or be in his control.  In each of those multiple instances, Rabbi Mayer's claims were soundly rejected after lengthy proceedings and/or evidentiary hearings/trials.

This is now the fourth time in the past two years that Rabbi Mayer has taken the frivolous position that he and/or his cronies were (or should be) in control of one or another entity such that he could purportedly divest that entity of its lawful rights to take actions in furtherance of its

---

[4]  Even were it not that Rabbi Aryeh became the sole member of 82 Highview LLC at that point, the Operating Agreement still gave him the exclusive right to manage the LLC.  Section II(3) of the Operating Agreement provided that "[t]his LLC shall be managed exclusively by its forming member manager."

business interests. His first two attempts in that regard were soundly rejected by the United States

Bankruptcy Court for the Southern District of New York, one after a full trial and one on a

summary judgment motion, both of which were affirmed on appeal to the United States District

Court for the Southern District of New York. The third was "voluntarily" dismissed after the

Bankruptcy Court denied from the bench a motion to remand the same.

### A. *Rabbi Mayer's False Claim to be in Control of Mosdos*

Rabbi Mayer's first futile attempt to assert control over an entity that he did not control

took place on November 12, 2019, when he commenced the case of *Mosdos Chofetz Chaim Inc.,*

*et. al. v. Mosdos Chofetz Chaim, Inc, et. al.* in the State Court under Index No. 036069/2019, which

case was eventually removed to the District Court, referred to this Bankruptcy Court, and litigated

as Adversary Proceeding 20-08949-rdd.

In that case, Rabbi Mayer claimed that he and his cohorts were the actual trustees of

Mosdos at the time that Mosdos transferred certain real property located at Kiryas Radin Drive in

Monsey, New York (the "Kiryas Radin Property") to Congregation Radin Development Inc.

("CRDI"), an entity which he claimed was controlled by Rabbi Aryeh. Rabbi Mayer claimed that

documents clearly establishing the contrary were purportedly fabricated by Rabbi Aryeh. Rabbi

Aryeh, on the other hand, asserted that the documentary evidence established conclusively that the

trustees of Mosdos were comprised of himself (Rabbi Aryeh) and certain other designated

individuals.

After a lengthy trial, the Bankruptcy Court rejected in its entirety Rabbi Mayer's

contentions that he and his cohorts were the trustees of Mosdos and specifically found that the

board designated by Rabbi Aryeh were the true and actual trustee of Mosdos. A copy of the

Bankruptcy Court's April 2, 2021 Order to that effect is annexed hereto and labeled Exhibit "8".

As can be seen from numbered paragraph 5 thereof, the Bankruptcy Court found that "It is determined and declared that the Board of Trustees of Mosdos Chofetz Chaim Inc. as of the Confirmation Date and the post-Confirmation Date transfer of the Property was as set forth at paragraphs 29 and 35 of the Trial Declaration of Rabbi Aryeh Zaks [DE-42]."[5]

### B. Rabbi Mayer's False Claim to be in Control of CRDI

Rabbi Mayer's second attempt to falsely assert management power over an entity that he did not control was on June 8, 2021, when he commenced the case of *Congregation Radin Development, et. al. v. Yom T. Henig, et. al.* in the State Court under Index No. 33145/2021, which case was eventually removed to District Court, referred to this Bankruptcy Court, and litigated as Adversary Proceeding 21-07030-rdd.

In that case, Rabbi Mayer claimed that he and his cohorts were the trustees, officers and members of Congregation Radin Development Inc. ("CRDI") such that they could cause CRDI to

---

[5] As this Court is aware, subsequent to that determination by the Bankruptcy Court (Judge Drain), Rabbi Mayer and his family refused to remove themselves from the Kiryas Radin Property, and appealed that determination to the District Court, which resulted in an affirmance of the same in all respects. Notwithstanding that, Rabbi Mayer and certain members of his family refused to vacate the Kiryas Radin Property, resulting in the Bankruptcy Court issuing an injunction prohibiting them from entering or remaining on the Kiryas Radin Property. Rabbi Mayer unsuccessfully attempted to obtain stays from both the Bankruptcy Court and the District Court (and, ultimately the Second Circuit) of that injunction, all of which courts rejected those motions, and Rabbi Mayer's appeal to the District Court resulted in an affirmance of the injunction in all respects. *Still*, he and his family members refused to remove themselves from the Kiryas Radin Property, resulting in the Bankruptcy Court issuing an Order holding Rabbi Mayer and several members of his family in contempt of Court and awarding coercive monetary sanctions against them should they not vacate. Again, they appealed the contempt order to the District Court and again the District Court affirmed the same in all respects. *Still*, they refused to remove themselves from the Kiryas Radin Property and, ultimately the Bankruptcy Court issued Writ of Assistance pursuant to Fed.R.Civ.P. Rule 70 (as made applicable in the Bankruptcy Court by Bankruptcy Rule 7070) directing the U.S. Marshals Service to assist in the physical eviction of Rabbi Mayer and his family from the Kiryas Radin Property. Even though that order was stayed by this Court for fourteen days to give Rabbi Mayer and his family members the opportunity to peacefully vacate the Kiryas Radin Property, they *still* refused to do so, ultimately resulting in their forced removal by the Marshals Service in mid-November of 2022.

withdraw contempt proceedings that had been commenced against Rabbi Mayer for his repeated intentional violation of the injunction previously issued by Judge Drain and affirmed by the District Court.    Again, he claimed that documents establishing the contrary were purportedly fabricated by Rabbi Aryeh.  Rabbi Aryeh, on the other hand, again presented evidence to this Court establishing that, in fact, Rabbi Mayer's contentions in that regard were frivolous.

After a fully briefed summary judgment motion was argued, the Bankruptcy Court, once again, rejected Rabbi Mayer's contentions in their entirety and awarded summary judgment dismissing his claims to be in control of CRDI.  A copy of the Bankruptcy Court's March 7, 2022, Order to that effect is annexed hereto and labeled Exhibit "9".  As can be seen from the first decretal paragraph on page 2 of the same, the Bankruptcy Court "**FOUND AND DETERMINED** that, there being no material issue of fact with respect thereto, (i) none of the Plaintiffs [including Rabbi Mayer] are officers, trustees, members, or otherwise in control of Congregation Radin Development Inc. …" (emphasis in original).

### C.  Rabbi Mayer's First False Claim to be in Control of YCC and 82 Highview

Rabbi Mayer's third attempt to falsely assert management power over an entity that he did not own or control was on June 21, 2021, when he filed an amended complaint in the case of *Yeshiva Chofetz Chaim Inc. v. Yeshiva Chofetz Chaim Inc./82 Highview LLC (a subsidiary), 82 Highview LLC, Arnav Industries Inc., Arnav Industries Inc. Profit Sharing Plan and Trust*, under Index No. 036178/2019, which case was eventually removed to the District Court, referred to this Bankruptcy Court, and litigated as Adversary Proceeding 21-7033-rdd (the "First YCC Action").  In that case, Rabbi Mayer (purporting to act on behalf of YCC) sought a declaratory judgment that no one other than YCC has any "right, title, claim or interest in the [Highview] Property

whatsoever, at law or at equity," and that YCC "is the owner of the [Highview] Property in fee simple absolute, free and clear of any claims …."

After a fully briefed remand motion was argued and denied from the bench by Judge Drain on October 18, 2021 [and subsequently confirmed in a written order, DE-10 in Docket No. 21-7033, on December 27, 2021], Rabbi Mayer "voluntarily" discontinued that adversary proceeding pursuant to Rule 7014 on December 22, 2021 [DE-9 in Docket No. 21-7033], and, the same day, withdrew and cancelled the Notices of Pendency regarding the Highview Property that he had previously filed in the State Court [Doc. No. 75 in Index No. 036178/2019].

In short, Rabbi Mayer's ludicrous November 2019 claims that he and his cohorts were trustees, officers and in control of Mosdos, his June 8, 2021 claim that he was in control of YCC and 82 Highview, and his equally preposterous June 21, 2021 claim that he and his cohorts were the trustees, officers and in control of CRDI, were either "voluntarily discontinued" or soundly and conclusively found by the Bankruptcy Court (based upon the documentary and testimonial evidence before it) to be completely meritless. [6]

### III.  The Prior Unsuccessful Attempts by Rabbi Mayer to Remand Proceedings

In each of the above referenced matters, after the same were removed to the District Court and referred to the Bankruptcy Court, Rabbi Mayer made a motion for remand or abstention, in

---

[6]  Although irrelevant to the instant remand motion, in the instant adversary proceeding, Rabbi Mayer once more claims to be in control of YCC, this time by virtue of an alleged meeting that took place on June 29, 2021.  However, the documentary evidence again establishes the contrary. Rabbi Mayer's supposed "newly created" Board of Trustees had neither the authority to establish a new board structure, nor to remove and "revoke" YCC's existing officers and trustees.  The June 29, 2021, purported meeting and any resolution that was passed at the YCC Board meeting was simply a nullity.  Moreover, even if such a meeting took place, YCC had no ownership interest in 82 Highview as of that date, because all right, title and membership interest in 82 Highview had returned to Rabbi Aryeh over two months earlier.  As of that date, other than being a permissive tenant of the Highview Property, YCC had and has no connection to 82 Highview or the Highview Property as of that time.

each case claiming that the Bankruptcy Court did not have jurisdiction over those proceedings.  In each of those motions, Rabbi Mayer made the identical arguments that he is making here, *to wit* that the matters at issue were purportedly not "core," there was no related to jurisdiction," and involved only the application of state law.  In each of those matters, however, both the Bankruptcy Court and the District Court rejected those claims, properly ruling that the Bankruptcy Court had jurisdiction to consider the matters because they directly affected the administration of the bankruptcy estate or affected prior orders made by the Bankruptcy Court.

In the Mosdos case (20-8949), the Bankruptcy Court denied Rabbi Mayer's remand/abstention motion in a written order [DE-17 in Docket No. 20-8949], and stated in the prior oral argument that "In the complaint in the removed action … Mosdos/Mayer Zaks seeks as relief a judgment that it has this [Kiryas Radin] property free and clear …" [DE-21 in Docket 20-8949, Tr. 35:11-13].  That denial was affirmed on appeal by the District Court [DE-49 in 21-cv-2872].

In the CRDI case (21-7030), the Bankruptcy Court denied Rabbi Mayer's original remand/abstention motion [DE-31], and then denied his second motion to remand or abstain [DE-109].  That denial was affirmed by the District Court in Docket No. 22-cv-02450 [DE-15].  On that appeal, Rabbi Mayer argued that the Bankruptcy Court lacked subject matter jurisdiction over the adversary proceeding because "this is a private controversy under state law among non-debtors concerning who controls CRDI after the sale of the Property."  The District Court, rejecting that argument, ruled that the "Bankruptcy Court had subject matter jurisdiction over this adversary proceeding." [DE-15, p.11].

In the YCC case (21-7033), Rabbi Mayer argued that "a case must be remanded where, as here, the subject matter of and (sic) the bankruptcy case is different from the case which was

removed" [DE-6 in Docket No. 21-07033, p. 2]. The Bankruptcy Court rejected that contention during oral argument, whereupon Rabbi Mayer "voluntarily" discontinued that adversary proceeding and vacated the notices of pendency that he had filed in the state court prior to removal of the same.

### IV.  The Tax Certiorari Litigation

On July 27, 2022, the Debtor filed a Notice of Petition for the review under Article 7 of the Real Property Tax Law of the State of New York, of the tax assessments of the Highview Property (the "Tax Certiorari Proceeding"). On September 22, 2022, the Debtor removed the Tax Certiorari Proceeding (which was then pending in Rockland County Supreme Court) to this Court. On October 3, 2022, the Town of Ramapo and the Board of Assessment Review of the Town of Ramapo (collectively, the "Town of Ramapo") filed a motion to dismiss the removed action and remand it back to state court. Subsequently, the Town of Ramapo and the Debtor stipulated that the action would be remanded back to Rockland County Supreme Court for disposition.[7] In the Debtor's schedules, the disputed claim is listed in the amount of $600,000.00 and, if Rockland County is successful in its claim in state court, those funds (plus additional interest and penalties) would be due and owing from the Debtor.

---

[7] A tax certiorari proceeding under New York law is an expedited, non-jury "special proceeding" commenced via the filing of a "petition," rather than a summons and complaint. Pursuant to 22 CRR-NY 202.60(b)(2), the state court is required, at the preliminary conference in the case, to "take whatever action is warranted to expedite final disposition of the case." Moreover, "the New York legislature has taken steps to expedite tax certiorari proceedings by creating mechanisms that accelerate the note of issue (*see* Sponsor's Mem, Bill Jacket, L 1995, ch 693)." *Highbridge Broadway, LLC v. Assessor of the City of Schenectady*, 2016 NY Slip Op 03544 (May 5, 2016). The disposition of that matter re is, therefore, likely to be expeditious in the State Court, part of the reason the Debtor consented to its remand.

## V. The Instant Adversary Proceeding

Within *one day* of his December 22, 2021, "voluntary" dismissal of the original YCC adversary proceeding (in which Rabbi Mayer claimed to be in control of YCC and 82 Highview and sought a declaration that YCC was the owner of the [Highview] Property notwithstanding the conveyance to the same to the Debtor) – and within *two hours* of the filing of his "vacatur" of the notices of pendency that he previously filed in the State Court in that case[8] – Rabbi Mayer commenced yet another action in the State Court (under Index No. 036879/2021), again claiming to be in control of YCC and 82 Highview, and again seeking the *identical* declaratory relief he previously sought, *to wit* an Order setting aside the conveyance from 82 Highview to the Debtor so as to give (i) 82 Highview sole ownership of the Highview Property, (ii) YCC control of 82 Highview, and (iii) Rabbi Mayer control of YCC (the "New YCC Action").[9]

Rabbi Mayer's transparent scheme to avoid litigating in the Bankruptcy Court the issue of the ownership of the Highview Property (in the first removed YCC action in which his remand/abstention motion had been denied),[10] constituted the most blatant form of forum shopping

---

[8] The stipulation vacating the notices of pendency was filed in the state court at 11:56 am on December 23, 2021, and the "new" action (with "new" notices of pendency) was filed at 1:47 pm on the same date.

[9] As in his other failed attempts at coup d'états, Rabbi Mayer claimed in this case that the documentary evidence establishing the falsity of his position (e.g., the 82 Highview operating agreement) was "fraudulent" and should be disregarded. However, just as he was unsuccessful in attempting the persuade the Court to disregard the clear documentary evidence vitiating his prior strong-arm power play attempts, he will be similarly unsuccessful here.

[10] That adversary proceeding was scheduled for a pretrial conference in which a prompt discovery schedule would have been issued by the Court and the matter expeditiously brought to a conclusion.

imaginable.[11]  With that *specific issue* teed up before the Bankruptcy Court for disposition in the

First YCC Action (for which a trial would have undoubtedly already been concluded and a

determination by now, almost a year later, made), Rabbi Mayer "voluntarily" discontinued the

same – all the while obviously planning to commence a "new" action for the virtually identical

relief *the following day* in state court in an attempt to avoid a determination of the issues by this

Court (which would have occurred in the First YCC Action).  Given his *multiple* prior unsuccessful

attempts to avoid determinations by this Court, it is almost inconceivable that Rabbi Mayer

believed that he could get away with that forum shopping scheme now.

## VI.  Plaintiffs' Proofs of Claim

On October 7, 2022, Movants filed identical but separate proofs of claims in the underlying

Chapter 11 case [Claims numbers 2 and 3], both of which were signed by Rabbi Mayer as

purported "president" of each of those entities.  Copies of the same are annexed hereto and

collectively labeled Exhibit "10".  As can be seen therefrom, although he same purported to "not

---

[11]  On February 15, 2022, the Debtor, pursuant to § 3211(a)(1) and (3) of the New York Civil
Practice Law and Rules, moved the State Court to dismiss the New YCC Action, arguing that the
documentary evidence (to wit, the 82 Highview Operating Agreement) established that (i) there
was a complete defense to the action based on that documentary evidence, (ii) YCC had no legal
capacity to sue, and (iii) Rabbi Mayer had no standing to act on behalf of YCC, as he was not a
board member nor officer of YCC at that time.  Rabbi Mayer "opposed" that motion by way of his
affirmation of March 18, 2022, wherein he claimed that the 82 Highview operating agreement was
a "sham" which he "doubt[ed] was even in existence on October 28, 2018".  The State Court,
ruling that Rabbi Mayer's challenge to 82 Highview's Operating Agreement precludes a finding
that the same "establish[es] a defense as a matter of law" and that his claims "give rise to questions
of fact regarding its alleged standing to maintain this action," ruled that "[g]iven this divergent
accounts and the questions raised by the parties' submissions, Defendants' application to dismiss
… is denied.  On July 27, 2022, given the fact that Rabbi Mayer's claim to ownership of the
Highview Property had not been summarily dismissed, and further given the fact that the Debtor
would be unable to pay any of its creditors if it was divested of its ownership of the Highview
Property, the Debtor filed the instant Chapter 11 proceeding.  On August 2, 2022, the New YCC
Action was removed to the District Court, which referred the same to this Court and it became the
instant adversary proceeding (22-07033).

be construed as (i) an election of remedies; (ii) an admission as to the jurisdiction of this Court and/or a waiver to contest the jurisdiction of this Court; (iii) a waiver of the right to trial by jury … or (x) a waiver of 82 Highview's right to seek to dismiss the Bankruptcy Case as improperly filed or to move for the Court to abstain from and/or remand any action removed as a result of this case …," the same referred to, and repeated verbatim, the allegations in the instant Adversary Proceeding including that YCC "is the sole member of 82 Highview LLC … [and] 82 Highview seeks a judgment to undo the unauthorized filing of a deed from 82 Highview to Shem Olam, LLC (the "Debtor") …"  As set forth below, despite the legally unsupported attempt to "reserve" their purported right to remand and/or abstention, the Plaintiffs have now, as a matter of law, placed squarely before this Court their attempt to set aside the conveyance of the Highview Property from 82 Highview to the Debtor such that remand and/or abstention with respect to those issues isa clearly inappropriate as a matter of law.

Moreover, as set forth below, and looking beyond Rabbi Mayer's blatant attempt at forum shopping, the instant motion for remand/abstention is otherwise doomed to failure as a matter of law for the same reasons his prior motions in that regard failed.

## **ARGUMENT**

### **POINT I**

### **MANDATORY ABSTENTION IS INAPPLICABLE BECAUSE THIS COURT HAS CORE JURISDICTION OVER THE "NEW" YCC ADVERSARY PROCEEDING**

Movants first argue that the instant Adversary Proceeding should be remanded "because it is subject to both mandatory and permissive abstention" [Motion, p. 5].[12]  Relying exclusively on

---

[12]  Movants initially argue, in a single sentence, that the instant Adversary Proceeding should be remanded because, purportedly, the "underlying bankruptcy case was filed in bad faith" [Motion, p. 5].  However, since that contention is dealt with in depth in the Debtor's opposition to the Movants' separate motion to dismiss the Chapter 11 case, that issue is not dealt with herein.

14

their analysis of the considerations enunciated in *MarketXT, Inc. v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574 (Bankr. S.D.N.Y. 2005), Movants argue that abstention is mandatorily required here because the matters raised in the instant Adversary Proceeding are purportedly not "core" [Motion, p. 6]. Alternatively, relying on the factors described in *Lebenthal Holdings, LLC v. S Street Sec. Holdings Inc. (In re Lebenthal Holdings LLC)*, 2018 WL 3629900 (Bankr. S.D.N.Y. 2018), they argue that permissive abstention is appropriate here primarily because "[t]his is a state-law proceeding that was already pending in the State Court …" [Motion, p. 9]. They are incorrect with respect to both contentions.

### I. *The issues in the instant Adversary Proceeding are "Core"*

28 U.S.C. § 1334(b) provides, in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 … or related to cases under title 11."[13]   28 U.S.C. § 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 28 U.S.C. § 1334 in turn vests district courts with jurisdiction over "all proceedings arising under title 11, or arising in or related to cases under title 11." *See generally Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (emphasis added). These "three types of jurisdiction that district ... courts may exercise under 1334 are colloquially referred to as 'arising under,' 'arising in,' and 'related to' jurisdiction." *Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P.*, 487 B.R. 158, 161 (S.D.N.Y. 2013). "Arising under" jurisdiction exists in

---

[13]   28 U.S.C. § 157(a) provides, in relevant part, that the District Court "may provide that any or all cases under title 11 and any or all proceedings … related to a case under title 11 shall be referred to the bankruptcy judges for the district. Subsection (b) of that statute provides, in relevant part, that "Bankruptcy judges may hear and determine all cases … referred under subsection (a) of this section …."

"any matter under which a claim is made under a provision of title 11." *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y: 2012). "Arising in" jurisdiction exists in a matter where the claims "are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 350-51 (2d Cir. 2010). Lastly, "related to" jurisdiction exists if the action's "outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) ["a civil proceeding is related to a title 11 case if the action's outcome might have *any conceivable effect* on the bankrupt estate."] (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 [2d Cir. 1992] [internal quotation marks omitted, emphasis added]); *Sub-Culture, LLC v. Rogers Invs. (In re Culture Project)*, 571 B.R. 555, 561 (Bankr. S.D.N.Y. 2017) (citing *Residential Funding Co. LLC v. UBS Real Estate Securities (In re Residential Capital, LLC)*, 515 B.R. 52, 63 n.12 [Bankr. S.D.N.Y. 2014]). To come within the scope of "related to" jurisdiction, the litigation must have a "significant connection" with the bankruptcy. *In re 19 Court St. Assocs., LLC*, 190 B.R. 983, 996 (Bankr. S.D.N.Y. 1996) (citing *In re Turner*, 724 F.2d 338, 340-41 [2d Cir. 1983]).

The doctrine of mandatory abstention is set forth in Code §1334(c)(2), as follows:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can timely be adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. §1334(c)(2).

A party seeking mandatory abstention must prove the following: "(1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not, arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole

basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be 'timely adjudicated' in state court". *Langston Law Firm v. Mississippi*, 410 B.R. 150, 153 (S.D.N.Y. 2008); *see also* 28 U.S.C. § 1334(c)(2).  A motion for abstention will be denied when the proponent of the motion fails to prove all six requirements of Section 1334(c)(2).  *See*, for example, *Kirschner v. Bennett*, 2008 U.S. Dist. LEXIS 37214, at *21 (S.D.N.Y. May 6, 2008). Here, Movants have failed to demonstrate that the Adversary Proceeding does not 'arise under' the Bankruptcy Code and is only 'related to' the Debtors' bankruptcy case.

This Court has core jurisdiction over the claims in this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2), which designates (in a non-exclusive list) a number of case types which are designated as "core proceedings."  Among them are (i) "matters concerning the administration of the estate," (ii) "allowance or disallowance of claims against the estate," (iii) "orders to turn over property of the estate," and (iv) "proceedings to determine, avoid, or recover fraudulent conveyances."  Specifically, the statute provides [at sub-section (b)(4)] that proceedings under subsection (b)(2)(B) [for the allowance or disallowance of claims against the estate] "shall not be subject to the mandatory abstention provisions of section 1334(c)(2)."

More specifically, the case law has made clear that the determination of what property constitutes the bankruptcy estate is a core proceeding.[14]  A bankruptcy estate is a construct of Section 541, and thus a proceeding to determine the bounds of the estate "arises under" Title 11. *See In re Reliance Grp. Holdings, Inc.,* 273 B.R. at 394–95 [issues at heart of state court actions "arise under" Title 11 by requiring determination of whether assets in dispute are property of

---

[14]  A debtor's bankruptcy filing creates an estate under Bankruptcy Code § 541 and, thereafter, any prior state court action can no longer be viewed in a vacuum.  That such action was commenced in state court prior to a debtor's chapter 11 filing does not preclude a determination that it is a "core"" proceeding.  *See*, *In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 394 n.33 (Bankr. E.D. Pa. 2002).

bankruptcy estate as defined in Section 541].  At the very least, a determination of whether property belongs to the estate is one "arising in" the proceeding.  *See BankUnited Fin. Corp. v. FDIC (In re Bank United Fin. Corp.),* 462 B.R. 885, 893-94 (Bankr. S.D. Fla. 2011) ["what is or is not property of a bankruptcy estate is an issue that stems from the bankruptcy itself, one that can only arise in a bankruptcy proceeding, since the concept of what is property of a bankruptcy estate does not exist outside of a bankruptcy case."] (internal citations omitted).

It is without question that bankruptcy courts have exclusive jurisdiction over property of the estate. See 28 U.S.C. § 1334(e) [stating that the court in which a case under title 11 is commenced or is pending "shall have exclusive jurisdiction – (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate"].  *See also, Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) [stating that "[c]ritical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property ..."].

That jurisdiction includes jurisdiction to decide whether disputed property is, in fact, property of the estate. *See*, e.g., *Salander O'Reilly Galleries*, 2011 WL 2837494, at *12–13 (Bankr. S.D.N.Y. 2011) [concluding that the bankruptcy court had core jurisdiction to decide priority of estate's and creditor's asserted interests in a piece of art]; *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 904-05 (Bankr. D. Del. 2010) [holding that the bankruptcy court had exclusive jurisdiction to determine whether or not disputed aircraft was property of the estate at the time of its sale]; *Williams v. McGreevey (In re Touch Am. Holdings, Inc.)*, 401 B.R. 107, 117 (Bankr. D. Del. 2009) [stating approvingly that "matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541 are core proceedings."].

Section 541(a) of the Bankruptcy Code defines "property of the estate" and provides that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Various courts have concluded that matters requiring a declaration of whether certain property comes within § 541's definition of "property of the estate" are core proceedings. *See Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines)*, 138 B.R. 442, 445 (D. Del. 1992) [A determination regarding property of the estate is a core proceeding]; *All American Laundry Service v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) [When a debtor and its creditors claim interests in property asserted to be part of the estate, the bankruptcy court has core jurisdiction to adjudicate all of those interests;[15] *Knopfler v. Schraiber (In re Schraiber)*, 97 B.R. 937, 939-40 (Bankr. N.D. Ill. 1989) [Bankruptcy court has core jurisdiction to determine what is estate property and can apply state law or any other relevant authority in making such a determination.].

In this District, the elements of "core" jurisdiction were laid out by Judge Seibel in *Kraken Investments Ltd. v. Jacobs (In re Salander-O'reilly Galleries, LLC)*, 475 B.R. 9, 28 (S.D.N.Y. 2012):

> The parties do not cite Second Circuit case law addressing whether the determination of what constitutes the bankruptcy estate is a core proceeding, but courts outside this circuit have held that it is, although there does not seem to be a consensus on the basis for such a determination. *See Williams v. McGreevey (In re Touch Am. Holdings, Inc.)*, 401 B.R. 107, 117 (Bankr. D. Del. 2009) ("Various courts have concluded that matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in

---

[15] The Ascher Court emphatically stated that a "determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction." 128 B.R. at 643. This is so, even though such a determination may rest upon interpretation of state law. *Continental*, 138 B.R. at 445 ["The determination of each party's interest in the property is made by reference to the applicable state's law, *Butner v. United States*, 440 U.S. 48, 55-56, 99 S.Ct. 914, 917-919, 59 L.Ed.2d 136 (1979), and the Bankruptcy Code determines whether that particular interest may properly be included in the property of the estate.]."

Bankruptcy Code § 541 are core proceedings.") (collecting cases); *Brown v. Fox Broad. Co. (In re Cox)*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010) ("It is generally recognized that a proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E), and that, whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.") (alterations, internal citations, and internal quotation marks omitted).  These cases hold that the Section 541 determination is a core proceeding "even though such a determination may rest upon interpretation of state law."  *Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 395 (Bankr.E.D.Pa.2002); *see also Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 138 B.R. 442, 445 (Bankr. D. Del. 1992) ("The determination of each party's interest in the property is made by reference to the applicable state's law, [ *Butner*, 440 U.S. at 54–56, 99 S.Ct. 914 (1979)], and the Bankruptcy Code determines whether that particular interest may properly be included in the property of the estate.  The determination of the property of the estate is one of the core proceedings arising under title 11."); *Johnson v. Fisher (In re Fisher)*, 67 B.R. 666, 668 (Bankr. D. Colo. 1986) ("The determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court.  However, in making such a determination the bankruptcy court must turn to state law to define such property rights.") (internal citations omitted).

Based upon that, Judge Seibel concluded that:

I find that the determination of what property constitutes the bankruptcy estate is a core proceeding, at least in this case and probably in most, if not all, cases. A bankruptcy estate is a construct of Section 541, and thus a proceeding to determine the bounds of the estate "arises under" Title 11, *see In re Reliance Grp.*, 273 B.R. at 394–95 (issues at heart of state court actions "arise under" Title 11 by requiring determination of whether assets in dispute are property of bankruptcy estate as defined in Section 541), or at least is one that has no existence outside bankruptcy, and thus is core as an "arising in" proceeding, *see BankUnited Fin. Corp. v. FDIC (In re Bank United Fin. Corp.)*, 462 B.R. 885, 893–94 (Bankr. S.D. Fla. 2011) ("[W]hat is or is not property of a bankruptcy estate is an issue that stems from the bankruptcy itself, one that can only arise in a bankruptcy proceeding, since the concept of what is property of a bankruptcy estate does not exist outside of a bankruptcy case.") (internal citations omitted).

Since the *Kraken* decision, Courts, citing *Kraken*, have virtually unanimously adhered to the proposition that where a dispute exists regarding property claimed by the estate to be the Debtor's property, the resolution of that issue is a "core" proceeding, regardless of whether a prior action had been commenced in state court regarding that topic.  *See*, for example, *JCF AFFM Debt*

*Holdings. L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins. Holdings, Inc.)*, 565 B.R. 566, 584 (Bankr. D. Del. 2017) ["what is or is not property of a bankruptcy estate is an issue that stems from the bankruptcy itself, one that can only arise in a bankruptcy proceeding, since the concept of what is property of a bankruptcy estate does not exist outside of a bankruptcy case."]; *Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 515-16 (S.D.N.Y. 2015) ["because it directly bears on the distribution of the Debtors' current property, this controversy "concern[s] the administration of the estate" by the Bankruptcy Court, which in turn is a core bankruptcy function"] (citing *U.S. Lines, Inc.*, 197 F.3d 631, 637 [2d Cir. 1999];[16] ["Core bankruptcy functions ... include ... 'administer[ing] all property in the bankrupt's possession.' "] (quoting *Straton v. New*, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060 [1931]); *Deutsche Oel & Gas S.A. v. Energy Capital Partners Mezzanine Opportunities Fund A*, No. 19-CV-11058 (RA), at *11 (S.D.N.Y. Sep. 30, 2020).

Here, the Debtor owns a single asset, the Highview Property. It is the *only* property that can be administered by this Court. Movants claim that, in fact, another entity owns that Property. The determination of that issue will *clearly* affect both this Court's ability to administer the estate, and well as the Debtor's ability to formulate a plan of reorganization and pay its creditors. As

---

[16]   In *U.S. Lines*, the Second Circuit holding that a dispute regarding pre-petition contracts constituted core proceedings because of "the impact these contracts have on other core bankruptcy functions," emphasized that "core proceedings" should be given a broad interpretation that is "close to or congruent with constitutional limits." 197 F.3d at 637. That broad interpretation of core proceedings has repeatedly been upheld by the courts subsequent to the *U.S. Lines* decision. *See*, for example, *Ernst & Young & Ernst & Young, LLP v. Bankruptcy Services, Inc. (In re CBI Holding Co.)*, No. 94-B-438129 (BRL), 01-CIV-0131 (KMW), at *15 (S.D.N.Y. June 26, 2004); *In re Salander O'Reilly Galleries*, 453 B.R. 106, 126 (Bankr. S.D.N.Y. 2011); *In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002); *In re Millenium Seacarriers, Inc.*, 02 Mont. 47 (CSH), No. 02-10180 (CB), Chapter 11, at *1 (S.D.N.Y. Mar. 25, 2002); *BGFI GP I LLC v. Prieto (In re WP Realty Acquisition III LLC)*, 626 B.R. 154, 159 (Bankr. S.D.N.Y. 2021).

such, the issue of whether the Debtor owns the Highview Property is a core issue before this Court, and this Court has exclusive jurisdiction to determine that issue. Mandatory abstention and remand is unquestionably *not* available under those circumstances because it is inapplicable to a core proceeding. *In re Texaco Inc.*, 77 B.R. 433, 439 (Bankr. S.D.N.Y. 1987); *In re Springer-Penguin, Inc.*, 74 B.R. 879 (Bankr. S.D.N.Y. 1987); *Muir v. Long Island Realty Funding Corp. (In re Muir)*, 107 B.R. 13, 17 (Bankr. E.D.N.Y. 1989); *In re Albion Disposal, Inc.*, 217 B.R. 394, 411 (W.D.N.Y. 1997); *In re Gawker Media LLC*, 581 B.R. 754, 760 (Bankr. S.D.N.Y. 2017); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010).[17]

The issue of ownership of the Debtor's sole asset, and the effect of that determination on the administration of the Debtor's estate and its potential reorganization, unquestionably renders the issues in the subject Adversary Proceeding core. As such, Movants' motion for mandatory abstention and remand must be denied.

## II.   *Movants' filing of a Proof of Claim also triggers "Core" Jurisdiction*

As set forth above, mandatory abstention is inapplicable where the issues in dispute arising from a prepetition action filed in state court directly involve a core proceeding in the bankruptcy

---

[17]   Movants' parenthetical argument that the issues in the subject Adversary Proceeding are non-core because the determination of ownership of the Highview Property will depend on the application of state law is also erroneous because that does not divest the proceeding of its essentially core nature. "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. §157(b)(3); *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 27 (S.D.N.Y. 2012) [noting that §157(b)(3) "demonstrates Congress' intent that bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate."]; *see* also *Ben Cooper, Inc. v. Ins. Co. of the State of Pa. (In re Ben Cooper)*, 896 F.2d 1394, 1399 (2d Cir. 1990) ["bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate."], vacated, 498 U.S. 964 (1990), reinstated, 924 F.2d 36 (2d Cir. 1991). Indeed, in *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002), the court found no material difference in the ability of the state and federal courts to decide issues of state law. *Id.* at 146.

case. The "key factor for mandatory abstention is that the proceeding must 'relate' to a case under title 11, but not be one 'arising in or arising under a case under title 11.' *In re Texaco, Inc.*, 109 B.R. 609, 612 (Bankr. S.D.N.Y. 1989). In *In re Texaco, Inc.*, the United States Bankruptcy Court for the Southern District of New York determined that when a debtor objects to a creditor's proof of claim involving undecided issues arising from a prepetition action filed in a state court, the creditor's motion for mandatory abstention must be denied because the debtor's objection to the proof of claim is a core proceeding arising under a case under title 11, and is therefore subject to the bankruptcy court's jurisdiction. *Id.* The Court held that despite the fact that a prepetition action "does not arise under title 11, or in a case under title 11, the issues in dispute were transformed after the commencement of [the debtor's bankruptcy case] into a proceeding arising under the Bankruptcy Code, in the context of a core proceeding, involving the debtor's objections to the [creditor's] claims." Id.

As the Supreme Court stated in *Katchen v. Landy*, "he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Katchen v. Landy*, 382 U.S. 323, 333 n.9, 86 S. Ct. 467, 15 L. Ed. 2d 391(1966). *See*, e.g., *S.G. Phillips Constructors, Inc.*, 45 F.3d 707 (2D Cir. 1995 ["The Supreme Court and this court have consistently held that in filing a proof of claim the petitioner submits to the bankruptcy court's equitable jurisdiction"]; *Langenkmp v. Culp*, 498 U.S. 42, 44, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990) (per curiam) ("by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power"; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59 n.14, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989) ("by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those

claims …"); *In re Manville, supra*, 896 F.2d 1384, 1389 (2d Cir. 1990) ["by filing a proof of claim, [the party] submitted itself to the equitable power of the bankruptcy court to disallow its claim"]; *Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines*, 132 B.R. 4, 7 (S.D.N.Y. 1991) ("When a creditor files a proof of claim it submits itself to the bankruptcy court's equitable power, and the claims, even though arising under state law, become core proceedings within the jurisdiction of the bankruptcy court").

Here, Movants have each filed a proof of claim in this case, thus triggering core jurisdiction under 28 U.S.C. § 157(b)(2)(B) for "allowance or disallowance of claims against the estate." *See Cent. Vt. Pub. Serv. Corp. v. Herbert,* 341 F.3d 186, 191-92 (2d Cir. 2003) [party opposing core jurisdiction filed proof of claim, thus creating core jurisdiction under 28 U.S.C. § 157(b)(2)(B), in what was otherwise asserted to be a non-core proceeding] (collecting cases); *S.G. Phillips Constructors, Inc. v. City of Burlington, Vt. (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 705 (2d Cir. 1995) ["when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim … The sole fact that the [creditor's] state law claim was filed before its petition has no bearing on whether the claim is characterized as core or non-core when a proof of claim has been filed."]. Because the proof of claim filed by Movants encompasses the same issues as those raised by the removed state law proceeding (in fact, the state court complaint was specifically referred to in the Movants' proofs of claim as forming the basis for its claim), those filings, without more, converted the underlying action into a core proceeding under § 157(b)(2)(B).

"When a creditor files a proof of claim it submits itself to the Bankruptcy Court's equitable power, and the claims, even though arising under state law, become core proceedings within the jurisdiction of the bankruptcy court." *Pan Am. World Airways. Inc. v. Evergreen Int'l Airlines.*

24

*Inc.*, 132 B.R. 4, 7 (S.D.N.Y. 1991) (citing *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389-90 [2d Cir. 1990]).  *See* also *In re Best Reception Svs., Inc.*, 220 B.R. 932, 944 (Bankr. ED. Term. 1998) ["where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under …  § 157(b)(2)(B)"], *aff'd*. 206 B.R. 757 (E.D. Pa. 1997).

As the Second Circuit put it in *In re Ames Dept. Stores*, 319 F. App'x 40, 41-42 (2d Cir. 2009, citations omitted):

> [T]his Court has concluded that a dispute which "involve[s] an issue already before the bankruptcy court as part of its consideration of [one party's] claim against the estate" affects a core bankruptcy function.  Additionally, the proceeds at issue here directly implicate obligations of the debtor and the amount of money available to creditors.  As Judge Jones held, resolution of the LFD-GE Capital action therefore "directly affects the core bankruptcy function of distributing and administering assets in the Ames bankruptcy estate."

Indeed, "it is axiomatic that filing a proof of claim triggers the claims allowance process under 11 U.S.C. § 501 et seq., which, by its very nature, is a 'core' proceeding that can arise only in a title 11 case."  *In re Argus Group 1700, Inc.*, 206 B.R. 737, 747-48 (Bankr. E.D. Pa. 1996) ["Debtors' proposition that the filing of a proof of claim in bankruptcy transforms a pre-petition state law claim which was filed in state court before the bankruptcy into a core proceeding is sound."], *aff'd* 206 B.R. 757 (E.D. Pa. 1997).  Indeed, it has long been black letter law that

> The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution.  Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.  Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.

*Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *see* also *In re Continental Airlines*, 125

F.3d 120, 131 (3d Cir. 1997) (citing and following *Wood*); *In re Exide Techs.*, 544 F.3d 196, 214

(3d Cir. 2008) ["it is axiomatic that filing a proof of claim triggers the claims allowance process

under 11 U.S.C. § 501 *et seq.*, which, by its very nature, is a 'core' proceeding that can arise only

in a title 11 case.'"].  That is especially true where, as here, the claims in the state court action are

similar or identical.  In *Kurz v. EMAK Worldwide, Inc.*, Civil No. 11-375-NLH, at *13-14 (C.D.

Cal. Sep. 9, 2011), the Court put it this way:

> A state law action and proof of claim are similar when the bankruptcy case and
> state law action are so intertwined that the resolution of the state law claim affects
> the allowance or disallowance of claims.  *Regal Row Fina, Inc.*, 2004 WL 2826817,
> at * 7; *see In re Norrell*, 198 B.R. 987, 993-994 & n.4 (Bankr. N.D. Ala. 1996)
> (holding that the state court action constituted a core proceeding because the factual
> basis for the state court action was identical to the factual basis for the proof of
> claim).  In other words, before the debtor can either establish a reorganization plan
> or pay its creditors, the extent of the debtor's liability to the creditor, if any, with
> respect to the state action must first be resolved.  *Regal Row Fina, Inc.*, 2004 WL
> 2826817, at * 7. Thus, when the potential recovery to the claimant is contingent
> upon a successful resolution of the state law action, the filing of a proof of claim
> transforms the state action into a core proceeding.

*See* also *In re Meyertech Corp.*, 831 F.2d 410, 417-18 (3d Cir. 1987) [recognizing that

although this "action … has as its foundation a question of the validity of a claim which accrued

under state law against the bankrupt estate prior to bankruptcy," the claimant's filing of a proof of

claim invoked the bankruptcy court's core jurisdiction]; *In re Phico Group, Inc.*, 304 B.R. 170,

173 (Bankr. M.D. Pa. 2003) [concluding that the filing of a proof of claim transformed a non-core

proceeding into a core proceeding].  Indeed, the act of filing a proof of claim "triggers the process

of 'allowance and disallowance of claims,' thereby subjecting [the claimant] to the bankruptcy

court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 and n. 14 (1989)].[18]

It is of no consequence that a state action "was originally asserted in a state court action, and did not arise under title 11 or in a case under title 11, and could not have been commenced in a court of the United States absent jurisdiction under the Bankruptcy Code." *In re Texaco, Inc.*, supra, 109 B.R. at 612. What is deemed to be a 'core matter' is governed by Code §157(b)(2)(B) and includes the "allowance or disallowance of claims against the estate." 28 U.S.C. §157(b)(2)(B). *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 Bankr. LEXIS 2581, at *40-41 (Bankr. S.D.N.Y. Aug. 4, 2015) ("The determination whether to allow or disallow [claims] is a statutory core proceeding."); *Buena Vista TV v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, 307 B.R. 404, 422 (Bankr. S.D.N.Y. 2004) ("28 U.S.C. §157(b)(2)(B) does not distinguish between pre-petition and post-petition claims, and that it rather broadly provides core jurisdiction for the 'allowance and disallowance of claims against the estate.'). Section 157(b) authorizes a bankruptcy judge to "hear and determine" core proceedings and enter final judgments in such proceedings. *In re Residential Capital, LLC*, 2015 Bankr. LEXIS 2581, at *40. Further, "[r]esolving issues raised by a creditor's proof of claim are quintessentially a part

---

[18] Moreover, although Movants' stated in their Notices of Claim that the same were not "intended" to be construed as any "admission" that this Court has jurisdiction over their claims, and also purported to reserve their right to, *inter alia*, move for abstention or remand, that purported "reservation" is ineffectual for at least two reasons. First, the "reservation" was contrary to the long line of cases that hold that the filing of a Notice of Claim converts an adversary proceeding seeking the identical relief a "core" proceeding, nor did the Movants "reserve" their right to contend that the adversary proceeding did *not* became core upon the filing of the Notices of Claim. Secondly, the Movants have not cited a single Second Circuit case that stands for the purported proposition that just uttering a purported "reservation" in a Proof of Claim incinerates the rule that the filing of the same renders the claims therein core. Were that the case, then any creditor could avoid the claims adjudication process indefinitely by simply "announcing" that the Proof of Claim was "subject" to the determination of some other outstanding matter that it claims to be outside of the Court's jurisdiction.

of the claims allowance process." *Id.* at *42.  Hence, when a debtor objects to the allowance of a

creditor's claim, "an issue [is] created which must be resolved under the exclusive jurisdiction of

the district court in a case under title 11, as governed by 28 U.S.C. §1334(d)." *In re Texaco, Inc.*,

*supra*, 109 B.R. at 612.

Moreover, cases within the United States Court of Appeals for the Second Circuit "have

upheld bankruptcy jurisdiction in what would otherwise be non-core proceedings where the party

opposing the finding of jurisdiction has filed a proof of claim." *Cent. Vt. PSC v. Herbert*, 341 F.3d

186, 191 (2d Cir. 2003).  To uphold jurisdiction in bankruptcy courts, the United States Court of

Appeals for the Second Circuit "relied on two theories: (i) the proof of claim transforms litigation

into a core proceeding; and (ii) by filing the proof of claim, the creditor consents to the bankruptcy

court's broad equitable jurisdiction." *Id.*

In *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors,*

*Inc.)* the Second Circuit held that "when a creditor files a proof of claim, the bankruptcy court has

core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under

state law." *S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors,*

*Inc.*), 45 F.3d 702, 705 (2d Cir. 1995) (citing *Gulf States Expl. Co. v. Manville Forest Prods. Corp.*

*(In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1389-90 (2d Cir. 1990).  The Second Circuit

found that "[t]he sole fact that the [debtor's] state law claim was filed before [the debtor's] petition

[was filed] has no bearing on whether the claim is characterized as core or non-core when a proof

of claim has been filed." *Id*.

The Second Circuit went on to state that "[b]ecause 'nothing is more directly at the core of

bankruptcy administration … than the quantification of all liabilities of the debtor,' the bankruptcy

court's determination of whether to allow or disallow a claim is a core function." *Id.* It is well

settled that "the basic principle that the filing of a proof of claim invokes the special rules of

bankruptcy concerning objections to the claim" and it can only be "*[u]nderstood in this sense, a*

*claim filed against the estate is a core proceeding because it could arise only in the context of*

*bankruptcy.*"[19] *Id.* at 706, emphasis added (citing *In re Manville*, 896 F.2d at 1390).  It should be

noted that "of course, the state-law right underlying the claim could be enforced in a state court

proceeding absent the bankruptcy, but the nature of the state proceeding would be different from

the nature of the proceeding following the filing of a proof of claim."  *In re Manville*, 896 F.2d at

1390 (internal citations omitted).

In *In re Manville*, the adversary proceeding involved a pre-petition breach of contract claim

and the creditor filed a proof of claim in the debtor's bankruptcy case.  *See In re Manville*, 896

F.2d at 1389.  The Second Circuit distinctly noted that the creditor was "not a third party related

only peripherally to the adjudication of [the debtor's] bankruptcy case." *Id.* at 1390.  By filing a

proof of claim, the creditor became a party in interest.  *Id.*  Moreover, any "[a]djustment of claims

against an estate has been and remains central to bankruptcy proceedings," thus mandatory

abstention did not apply to a core proceeding involving a Trustee's objection to a creditor's claim.

*Id.* (citing *In re Lion Capital Group*, 46 Bankr. 850, 860 [Bankr. S.D.N.Y. 1985]).

In the matter at bar, there is no question that the claims in the subject Adversary Proceeding

are identical to the claims in the Movants' Proofs of Claims.  The Third Circuit's decision in *In re*

*Meyertech Corp.*, a case similar to the pending matter, is especially illustrative of the relationship

between the filing of a proof of claim and a related state action.  In that case, after the creditor filed

---

[19]  "[T]he Second Circuit and courts in this district have consistently held adversary proceedings against a creditor that have traditionally been non-core to be core pursuant to §§157(b)(2)(B) and (c) due to the filing of a proof of claim …"  *Buena Vista TV*, *supra*, 307 B.R. at 419 (internal citations omitted).

a proof of claim, its state law product liability action for allegedly negligent pre-petition conduct was adjudicated by the bankruptcy court. *In re Meyertech Corp.*, *supra*, 831 F.2d at 412-13. After the conclusion of the adversarial proceeding, the creditor appealed and asserted that the bankruptcy court lacked jurisdiction to decide the matter because the state law claim was not a core proceeding as defined by 28 U.S.C. § 157(b)(2). *Id.* at 413. The Third Circuit disagreed. First, it characterized the bankruptcy proceeding as an "action which has as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy." *Id.* at 417. This characterization was critical because it demonstrated both the degree of similarity and connectedness between the state action and the bankruptcy case. In order to resolve the bankruptcy case, the court first had to adjudicate the state claim. The *Meyertech* Court then noted that the creditor's act of filing a proof of claim created the action in bankruptcy court. *Id.* at 418. Thus, by invoking the jurisdiction of the bankruptcy court with respect to a state action with the identical factual basis as the proof of claim, the state court claim was transformed into a core proceeding. *See id.* at 417-18.

Thus, even if this Bankruptcy Court does not have "arising under" or "arising in" core jurisdiction (which it does), the long line of cases cited above establish that it has core jurisdiction over the issue of ownership of the Highview Property as part of the determination of the Movants' claims set forth in their Proofs of Claim, which determination is unquestionably core. Consequently, as established above, mandatory abstention and remand is unquestionably not available because it is inapplicable to a core proceeding. *In re Texaco Inc.*, 77 B.R. 433, 439 (Bankr. S.D.N.Y. 1987), et. al.

## POINT II

## DISCRETIONARY ABSTENTION IS UNWARRANTED

Realizing that their mandatory abstention argument is doomed to failure, Movants next assert that, after the Court determines that it has jurisdiction over the subject Adversary Proceeding and is not required to mandatorily abstain, it should nonetheless discretionarily abstain and remain pursuant to 28 U.S.C. § 1334(c)(1) [Motion, p. 8-9]. Relying exclusively on the factors enunciated by Judge Glenn in *Lebenthal Holdings, LLC v. S. Street Holdings Inc. (In re Leenthal Holdings, LLC)*, 2018 WL 3629900 (Bankr. S.D.N.Y. 2018), in which a motion for abstention was *denied* by the Court, Movants' argue that the relevant factors mandate discretionary recusal in this case.

"When a district court abstains from hearing cases involving 'core' proceedings, the abstention decision can only be made pursuant to §1334(c)(1), which leaves abstention to the district judge's discretion." *S.G. Phillips Constructors, Inc.*, supra, 45 F.3d at 708. A court asked to abstain on this ground must be mindful that Congress "inten[ded] to define 'core' bankruptcy proceedings expansively," *Baker*, *supra*, 613 F.3d at 351 (citing *In re CBI Holding Co.*, 529 F.3d 432, 460–61 [2d Cir. 2008]), and that "core" proceedings are to be given "broad interpretation that is close to or congruent with constitutional limits," *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) (quoting *In re Best Prods. Co.*, 68 F.3d 26, 31 (2d Cir. 1995); *accord In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) ["[I]t is clear that Congress intended § 157(b)(2)(A)'s designation of matters relating to the administration of the estate as core to encompass a wide range of matters …"].

Against the bedrock principle that federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them" (*Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 [1976]), "Courts must be sparing in their exercise

of permissive abstention, and may abstain only for a few extraordinary and narrow exceptions."

*In re Residential Capital, LLC*, 2015 Bankr. LEXIS 2581, at *43 (citing *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) (internal citations and quotation marks omitted); *accord In re Residential Capital, LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014) ["A federal court must be 'sparing in its exercise of permissive abstention' because [it] posses[es] a virtual unflagging obligation … to exercise the jurisdiction given [to it]" (quoting *Kirschner v. Grant Thorton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008)]. Courts in this district commonly consider the following twelve factors when determining whether to abstain from hearing a proceeding:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in [] state court or other nonbankruptcy court, (5) the jurisdiction basis, if any, other than 28 U.S.C. §1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Residential Capital, LLC*, 2015 Bankr. LEXIS 2581, at *43-45 (internal citations omitted). It should be noted that, "[n]ot all of these factors need be applied, however, although the balance should be heavily weighted in favor of the exercise of jurisdiction." *Id.* (citing *In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009) (internal citations and quotation marks omitted). Here, however, the primary factor – the effect or lack thereof on the efficient administration of the estate – mandates heavily against abstention. If the Adversary Proceeding is remanded, the entire Chapter 11 proceeding comes to a complete halt because (i) the

Debtor cannot possibly formulate a plan of reorganization, nor can this Court administer the estate at all, until the proceedings in the State Court (which could conceivably take years). Moreover, there is no difficulty or unsettled nature of the applicable state law, the instant Adversary Proceeding is directly related to the main bankruptcy case (indeed, the case cannot be prosecuted absent a determination of the Adversary Proceeding), and there is no right to a jury trial in the Adversary Proceeding because it seeks *only* equitable relief.

In general, the doctrine of discretionary abstention should be narrowly construed "when adjudicating controversies entrusted to the jurisdiction of the federal court." *In re Texaco, Inc.*, 109 B.R. at 613 (citing *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 104 S. Ct. 2321, 81 L. Ed. 2d 186 (1984); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). A bankruptcy court's "primary concern should be whether the federal bankruptcy objectives are properly served if the Bankruptcy Court conceded the constitutional jurisdiction to a state court." *In re Texaco, Inc.*, *supra*, 109 B.R. at 613.

In *In re Texaco, Inc.*, the United States Bankruptcy Court for the Southern District of New York held that discretionary abstention was "inappropriate in a proceeding involving the objection to a creditor's claim." *Id.* Further, the Court went on to state that "all claims against a debtor in a bankruptcy case should be resolved in conjunction with the bankruptcy case … absent a compelling reason why the Bankruptcy Court should relinquish its mandate to a prepetition state court action." *Id.*

Here, Movants purport to assert that permissive abstention is warranted, yet fail to take into consideration that the Debtor has objected to their Claims, thereby creating a core proceeding directly related to the bankruptcy case and the causes of action asserted in the subject Adversary

33

Proceeding.  Moreover, discretionary abstention is not applicable because abstention would impair the ongoing claims reconciliation process as a consequence of delay and increased administrative costs.  The Debtor's Objection to the Movants' Proofs of Claim and the Adversary Proceeding arise under the same operative transactions and alleged that the sale by 82 Highview to the Debtor was "fraudulent" or "without authority," and, thus, should be heard by one court of competent jurisdiction, which the Debtor believes is this Court.

In addition, the Movants' Motion lacks any compelling reasons why this Court should remand the Adversary Proceeding back to state court, other than the Movants obvious preference to avoid litigation in this Court under any circumstances.  The Movants also fail to cite any reason why this Court cannot determine the state law issues involved in the Adversary Proceeding, since the issues do not raise any novel or complex state law issues, and this Court regularly adjudicates such issues in the context of claims objections.

Furthermore, comity would dictate that this Court exercise jurisdiction over the Adversary Proceeding since it is *directly* connected and intertwined with the resolution of the Movants' Claims and the Debtor's Objection to the same, and the facts surrounding both matters are identical.

As a result of the foregoing, this Court should deny the Movants' Motion for permissive abstention.

## <u>CONCLUSION</u>

This Court should deny Movants' Motion in its entirety for the following reasons: (i) mandatory abstention is inapplicable because the instant Adversary Proceeding is a core proceeding in the context of the Bankruptcy Code, (ii) the Proofs of Claim filed by Movants are directly connected to the outcome of, and inexorably intertwined with, the Adversary Proceeding; (iii) it is inappropriate to exercise discretionary abstention in a core proceeding involving a matter that will determine a contested the right of ownership of Property claimed by the Debtor to be its property; and (iv) the elements considered on a motion for discretionary abstention weigh heavily in favor of denying that motion.

Dated: December 5, 2022

**LEECH TISHMAN ROBINSON BROG, PLLC**

**By:**  s/ *Steven B. Eichel*
      **Steven B. Eichel**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
*Attorneys for the Debtor and Debtor in Possession*

**LEVINE & ASSOCIATES, P.C.**

**By:**  s/ *Michael Levine*
      **Michael Levine**
15 Barclay Road
Scarsdale, New York 10583
Telephone (914) 600-4288
Michael Levine
*Special Litigation Counsel for
the Debtor and Debtor in Possession*